# EXHIBIT A

COMPLAINT of TESLA, INC., a Delaware corporation V. GUANGZHI CAO, AN INDIVIDUAL

**TESLA MOTORS, INC.**
**EMPLOYEE PROPRIETARY INFORMATION**
**AND INVENTIONS AGREEMENT**

In consideration of my employment or continued employment by **TESLA MOTORS, INC.** (the "***Company***"), and the compensation now and hereafter paid to me, I hereby agree as follows:

**1.    PROPRIETARY INFORMATION.**  At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.  "***Proprietary Information***" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company, its parents, subsidiaries, or affiliated entities, customers and suppliers, or any other party with whom the Company agrees to hold information of such party in confidence, including but not limited to information relating to products, processes, know-how, designs, formulas, methods, developmental or experimental work, improvements, discoveries, inventions, ideas, source and object codes, data, programs, other works of authorship, and plans for research and development.  During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person.

**2.    ASSIGNMENT OF INVENTIONS.**

**2.1    Proprietary Rights.**  The term "***Proprietary Rights***" shall mean all trade secret, patent, patent application, copyright, mask work, rights in databases, and other intellectual property rights throughout the world, including any registrations of or applications to register such rights.

**2.2    Moral Rights.**  The term "***Moral Rights***" shall mean any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

**2.3    Inventions.**  The term "***Inventions***" shall mean all trade secrets, inventions, mask works, ideas, processes, formulas, source and object code, data, databases, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques that I make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable or protectable as trade secrets.

**2.4    Prior Inventions.**  I have set forth on **Exhibit A, PRIOR INVENTIONS DISCLOSURE, to this Agreement** a complete list of all inventions that I have, alone or jointly with others, made prior to the commencement of my employment with the Company that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "***Prior Inventions***").  If no such disclosure is attached, I represent that there are no Prior Inventions.  If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, and sell such Prior Invention.  Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

**2.5    Labor Code Section 2870 Notice.**  I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

*ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:  (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE-MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.  TO THE EXTENT A PROVISION IN AN*

*EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.*

**2.6 Works for Hire; Assignment of Inventions.** I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree to assign, and do hereby assign, to the Company all my right, title and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by me for the Company, or (iii) relate to the Company's business or actual or demonstrably anticipated research and development (the "***Company Inventions***"). I agree to assign, and do hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

**2.7 Obligation to Keep Company Informed.** I will promptly and fully disclose in writing to the Company all Inventions, including any that may be covered by Section 2870.

**2.8 Assistance**. I agree to assist in every proper way and to execute those documents and to take such acts as are reasonably requested by the Company to obtain, sustain and from time to time enforce patents, copyrights and other rights and protections relating to Company Inventions in the United States or any other country. I appoint the Secretary of the Company as my attorney-in-fact to execute documents on my behalf for the purposes set forth in this paragraph. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

**3. NO CONFLICTING OBLIGATION.** I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict herewith.

**4. RETURN OF COMPANY DOCUMENTS.** Upon termination of my employment with the Company for any reason whatsoever, voluntarily or involuntarily, and at any earlier time the Company requests, I will deliver to the person designated by the Company all originals and copies of all documents and other property of the Company in my possession, under my control or to which I may have access. I will not reproduce or appropriate for my own use, or for the use of others, any property, Proprietary Information or Company Inventions.

**5. LEGAL AND EQUITABLE REMEDIES.** Because my services are personal and unique and because I may have access to and become acquainted with the Proprietary Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

**6. NOTICES.** Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or if sent by certified or registered mail, three (3) days after the date of mailing.

**7. EMPLOYMENT.** I agree and understand that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

**8. NON-SOLICITATION.**

**8.1** During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or proprietary or confidential information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or proprietary or confidential information of the Company.

**8.2** During the term of my employment and for one (1) year following any termination of my employment with the Company, I will not, directly or indirectly (whether for compensation or without compensation), solicit any employee or contractor of the Company to terminate their employment with, or otherwise cease their relationship with, the Company.

3.

.   **GENERAL PROVISIONS.**  This Agreement will be governed by and construed according to the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents.  In case any one or more of the provisions contained in this Agreement shall, for any

reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.  The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.  The Company may assign any of its rights or obligations under this Agreement.  No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach.  No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.  This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.  This Agreement shall be effective as of the first day of my employment with the Company.

**Dated:** _____

_____
**(Signature)**

_____
**(Printed Name)**

_____
**(Address)**

_____

**Accepted and Agreed To:**

**TESLA MOTORS, INC.**

_____
**(Signature)**

_____
**(Printed Name)**

_____
**(Title)**

**E**XHIBIT **A**

**TO:**      Tesla Motors, Inc.

**FROM:**    _____

**DATE:**    _____

**SUBJECT:** Prior Inventions

**1.**     **Except as listed in Section 2 below**, the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

_____

_____

_____

☐    Additional sheets attached.

**2.**     Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| | **Invention or Improvement** | **Party(ies)** | **Relationship** |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

☐    Additional sheets attached.

**\*\*\* WARNING** - If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on page 4, we assume that you do not have any inventions.