# EXHIBIT B

COMPLAINT of TESLA, INC., a Delaware corporation V. GUANGZHI CAO, AN INDIVIDUAL

# TESLA, INC. EMPLOYEE NON-DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT

In consideration of my employment or continued employment by **TESLA, INC.** (collectively with its divisions, subsidiaries and affiliates, the "***Company***") and the compensation now and hereafter paid to me, I agree as follows:

1. **PROPRIETARY INFORMATION.** At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. "***Proprietary Information***" shall mean all information, in whatever form and format, to which I have access by virtue of and in the course of my employment by the Company. Proprietary Information includes without limitation technical data, trade secrets, know-how, research and development, products, features, concepts, ideas, plans, designs, formulas, methods, processes, discoveries, improvements, source and object codes, data, programs, lists of or information relating to, employees, suppliers, and customers, financial information and other business information, Inventions, and works of authorship. Notwithstanding the foregoing, Proprietary Information excludes any information that is or lawfully becomes part of the public domain. I agree that, in any dispute related to this Agreement, I will bear the burden of proving by clear and convincing evidence the applicability of this exclusion. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

2. **ASSIGNMENT OF INVENTIONS.**

    2.1 **Proprietary Rights.** The term "***Proprietary Rights***" shall mean all trade secret, patent, copyright, mask work, and other intellectual property rights throughout the world, including any registrations of or applications to register such rights.

    2.2 **Moral Rights.** The term "***Moral Rights***" shall mean any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

    2.3 **Inventions.** The term "***Inventions***" shall mean any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audiovisual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation, or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked, or otherwise protected (including all versions, modifications, enhancements, improvements, and derivative works thereof).

    2.4 **Prior Inventions.** I have set forth on <u>**Exhibit A, PRIOR INVENTIONS DISCLOSURE, to this Agreement**</u> a complete list of all inventions that I have, alone or jointly with others, conceived, developed, or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "***Prior Inventions***"). If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process, or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, and sell such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

    2.5 **Labor Code Section 2870 Notice.** I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully as a nonassignable invention under the provisions of Section 2870 of the California Labor Code, which states:

    > *ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE*

1

*EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DE-MONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.*

**2.6    Works for Hire; Assignment of Inventions.** I acknowledge and agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works for hire" under the U.S. Copyright Act and that the Company will be considered the author and owner of such works. I further agree to assign, and do hereby assign, to the Company all my right, title and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities, trade secrets, or Proprietary Information of the Company, (ii) result from work performed by me for the Company, or (iii) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research and development of the Company (the "***Company Inventions***"). I agree to assign, and do hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

**2.7    Obligation to Keep Company Informed.** During the period of my employment and for twelve (12) months after the termination of my employment with the Company, I will promptly and fully disclose in writing to the Company all Inventions authored, conceived, or reduced to practice by me, either alone or jointly with others, in connection with, derived from, or as a result of the work performed by me during my employment with the Company, or any Proprietary Information to which I had access during or as a result of my employment with the Company. In addition, I acknowledge and agree that all patent applications for such Inventions that are filed by me or on my behalf, whether during my employment or after termination of my employment, are subject to this Agreement and belong to the Company. At the time of each such disclosure, I will advise the Company in writing of any Inventions that I believe fully qualify for protection under Section 2870 of the California Labor Code and will provide to the Company in writing all evidence necessary to substantiate that belief.

**2.8    Notice to Third Parties.** During and after the term of my employment, the Company may, with or without prior notice to me, notify third parties of my agreements and obligations under this Agreement.

**2.9    Assistance**. I agree to assist in every proper way and to execute those documents and to take such acts as are reasonably requested by the Company to obtain, sustain, and from time to time enforce patents, copyrights, and other rights and protections relating to Company Inventions in the United States or any other country. I hereby irrevocably designate and appoint the Secretary of the Company as my attorney-in-fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this paragraph with the same legal force and effect as if executed by me. My obligations under this paragraph will continue beyond the termination of my employment with the Company for any reason, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

**3.    R<small>ECORDS</small>.** I agree to keep and maintain adequate and current written records of all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times. I will promptly disclose all such Inventions in writing to the Company and will supplement any such disclosures to the extent the Company may request. If I have any doubt as to whether or not to disclose an Invention to the Company, I will disclose it.

**4.    R<small>ETURN OF</small> C<small>OMPANY</small> R<small>ECORDS</small>.** Upon the termination of my employment for any reason, or at such earlier time as the Company may request, I shall immediately return to the Company all originals and copies of all hard copy and electronic documents, files

and other property of the Company in my possession or control or to which I may have access, including all records referred to in Section 3 above, regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB flash drives, flash memory cards, and cloud storage).

**5. NO CONFLICTING OBLIGATIONS.** I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. Without limiting the foregoing, I agree that during my employment by the Company I will not improperly use or disclose any confidential information or trade secrets of any former employer or any other person to whom I have an obligation of confidentiality; I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person; and I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or otherwise in the public domain, or is otherwise provided or developed by the Company. I have not entered into and will not enter into any agreement or understanding, either written or oral, in conflict herewith.

**6. LEGAL AND EQUITABLE REMEDIES.** I acknowledge and agree that violation of this Agreement by me may cause the Company irreparable harm and that the Company shall therefore have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

**7. NOTICES.** Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, three (3) days after the date of mailing.

**8. EMPLOYMENT.** I understand and agree that nothing in this Agreement shall confer any right with respect to continuation of employment, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

**9. NON-SOLICITATION.**

9.1 During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the Company's customers and suppliers and/or other confidential information related to them, including their buying and selling habits and special needs.

9.2 I acknowledge that the Company has invested, and will continue to invest, significant time and money to recruit and retain its employees. I recognize that in the course of my employment I have obtained or will obtain valuable information about the Company's employees and contractors, and their respective talents and areas of expertise.

9.2.1 I agree that during the term of my employment and for twelve (12) months thereafter, I will not directly or indirectly, for my own account or for others, solicit (or assist another in soliciting) for employment or for the performance of services any Company employee or contractor with whom I had contact or of whom I became aware during the period of my employment. Nor will I, for my account or for others, in any way induce or attempt to induce any such individual to terminate his or her employment by or performance of services for the Company.

9.2.2 During and after the termination of my employment with the Company, I will not directly or indirectly hire or otherwise take away any of the Company's employees (as an employee or an independent contractor) if, in so doing, I use or disclose any of the Company's trade secrets, including without limitation the non-public names and addresses of the Company's employees and/or other confidential information related to them, including their skills, experience, current projects or assignments for the Company and specialized experience in Company technology and Inventions.

**10. 18 U.S.C. § 1833 NOTICE.** I have been given notice of the immunity provided by 18 U.S.C. § 1833(b)(1), which provides:

> *IMMUNITY. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made- (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely*

*for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.*

**11. GENERAL PROVISIONS.**

    **11.1** This Agreement will be governed by and construed according to the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents. I agree to submit to the jurisdiction of, and that exclusive jurisdiction over and venue for any action or proceeding arising out of or relating to this Agreement shall lie, in the state and federal courts located in Santa Clara or San Francisco Counties, California.

    **11.2** If any provision of this Agreement is found to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed or reformed by limiting and reducing it to the extent required to render it enforceable under applicable law. If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Nothing in this Agreement is intended to restrict, or shall be interpreted as restricting, my right to engage in activity protected by Section 7 of the National Labor Relations Act or any other applicable state or federal law.

    **11.3** The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. The Company may assign any of its rights or obligations under this Agreement

    **11.4** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

    **11.5** This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

    **11.6** Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

Dated: _____

_____
(Signature)

_____
(Printed Name)

_____
(Address)

_____

<u>Exhibit A</u>

**TO:**        Tesla, Inc.

**FROM:**

**DATE:**

**SUBJECT:**    Prior Invention

1.     **<u>Except as listed in Section 2 below</u>**, the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

_____

_____

_____

_____

☐    Additional sheets attached.

2.     Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| | **Invention or Improvement** | **Party(ies)** | **Relationship** |
|---|---|---|---|
| 1. | _____ | _____ | _____ |
| 2. | _____ | _____ | _____ |
| 3. | _____ | _____ | _____ |

☐    Additional sheets attached.

**\*\*\* WARNING** - If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on Exhibit A, we assume that you do not have any inventions.