1  Fred Norton (SBN 224725)
   Bree Hann (SBN 215695)
2  Matthew W. Turetzky (SBN 280997)
   THE NORTON LAW FIRM PC
3  299 Third Street, Ste 106
   Oakland, California 94607
4  Telephone: (510) 906-4900
   Fax: (510) 906-4910
5  fnorton@nortonlaw.com
   bhann@nortonlaw.com
6  mturetzky@nortonlaw.com

7  *Attorneys for Plaintiff*
   TESLA, INC.

8
                        **UNITED STATES DISTRICT COURT**
9
                       **NORTHERN DISTRICT OF CALIFORNIA**
10
                             **SAN FRANCISCO DIVISION**
11

12  TESLA, INC., a Delaware corporation,      )   Case No. 19-cv-01463-VC
13                                             )
         *Plaintiff*,                          )   **PLAINTIFF TESLA, INC.'S MOTION TO**
14                                             )   **COMPEL NON-PARTY XIAOLANG**
    v.                                         )   **ZHANG TO RESPOND TO PLAINTIFF'S**
15                                             )   **DOCUMENT SUBPOENA**
    GUANGZHI CAO, an individual,               )
16                                             )   Date: May 28, 2020
         *Defendant*.                          )   Time: 10:00 a.m.
17                                             )   Dept.: Courtroom 4 – 17th Floor
                                               )   Judge: Hon. Vince Chhabria
18                                             )

19

20

21

22

23

24

25

26

27

28
---
Case No. 19-cv-01463-VC

PLAINTIFF TESLA, INC.'S MOTION TO COMPEL RE ZHANG DOCUMENT SUBPOENA

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on May 28, 2020 at 10:00 a.m. or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in the courtroom of the Honorable Vince Chhabria, Plaintiff Tesla, Inc. will and hereby does move the Court for an order compelling non-party Xiaolang Zhang to produce documents in response to a subpoena. This motion is brought on the following grounds:

1. The documents sought from Zhang by Tesla's subpoena are relevant to Tesla's claims against Defendant Guangzhi Cao.
2. The Fifth Amendment to the United States Constitution generally does not protect a responding party from producing responsive non-privileged documents.
3. The Fifth Amendment's "Act of Production" doctrine does not apply to this situation.

This motion is brought pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and will be based on this notice; the accompanying memorandum of points and authorities filed herewith; the Declarations of Matthew Turetzky, Jacob Nocon, and David Farnham, filed concurrently herewith; all of the pleadings, files, and records in this proceeding; all other matters of which the Court may or must take judicial notice; and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

# TABLE OF CONTENTS

I.   Factual Background ................................................................................................................ 1

II.  Argument ............................................................................................................................... 5

    A.    Legal Standard............................................................................................................ 5

    B.    Tesla's Subpoena Seeks Nonprivileged Documents Relevant To Its Claims Against Guangzhi Cao................................................................................................................ 6

    C.    The Fifth Amendment's "Act Of Production" Doctrine Does Not Apply ........................ 6

    D.    The Zhang Protective Order Does Not Bar The Production Of Responsive Documents That Zhang Obtained Independent Of The Government ............................................... 8

III.  Conclusion ............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Callwave Commc'ns, LLC v. Wavemarket, Inc.*,
  No. C 14-80112 JSW (LB), 2014 WL 2918218 (N.D. Cal. June 26, 2014) .................................. 5

*Fisher v. United States*,
  425 U.S. 391 (1976) ............................................................................................................... 7, 8

*Fujikura Ltd. v. Finisar Corp.*,
  2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ............................................................................... 5

*Moore v. Gilead Scis., Inc.*,
  No. C 07-03850 SI, 2011 WL 5572975 (N.D. Cal. Nov. 16, 2011) ........................................ 7, 8

*United States v. Doe*,
  465 U.S. 605 (1984) ..................................................................................................................... 6

*United States v. Hubbell*,
  530 U.S. 27 (2000) ............................................................................................................. 4, 5, 7

*Xyngular Corp. v. Schenkel*,
  No. 13-mc-80123-EMC (JCS), 2013 WL 10733830 (N.D. Cal. Nov. 5, 2013) ...................... 7, 8

**Federal Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 5, 6

Fed. R. Evid. 401 ................................................................................................................................. 5

**Local Rules**

N.D. Cal. Civ. L.R. 37-2 ................................................................................................................. 2, 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

In this trade secret misappropriation case, Tesla moves to compel the production of documents from third party Xiaolang Zhang.

The defendant here, Guangzhi Cao, is a former Tesla employee who improperly copied the entirety of Tesla's highly valuable, trade secret autonomous driving source code to his personal cloud storage account, his personal computers, and a portable thumb drive, and then abruptly quit to work for a China-based imitator of Tesla, XMotors. Third party Zhang is a former Apple employee who was arrested and stands indicted for attempting to steal Apple's technology and deliver it to his new employer – also XMotors.

Cao had read about Zhang's attempt in the summer of 2018, and even texted a friend that XMotors and Zhang must have "agreed on the price before to get the documents." Not long after, Cao himself was interviewing for a job at XMotors and using the same difficult-to-trace method that Zhang reportedly used – Apple Airdrop – to move source code files to his personal computer. Weeks later, Cao was interviewing at XMotors in China, and just weeks after that, he had quit his job at Tesla, and was working at XMotors, still in possession of Tesla's trade secret source code. Tesla ultimately discovered Cao's misconduct and sued him in March 2019.

On January 16, 2020, Tesla served a document subpoena on Zhang, seeking (1) production of documents relating to Zhang's prosecution and (2) communications between Zhang and XMotors.

Zhang made no relevance or burden objections. Given the high degree of similarity between the Zhang's conduct and Cao's, the common nexus of XMotors' involvement, and the fair inference that neither engineer would have misappropriated autonomous driving technology unless they believed it would be useful to and used by XMotors, relevance is plain. And given that the request is specific and the documents are likely all already organized for production, any burden would be *de minimis*.

Zhang nonetheless refused to comply with the subpoena based on two misplaced objections. ***First***, he asserts the Fifth Amendment "act of production" doctrine. But the Fifth

Amendment affords no privilege as to documents, like those Tesla seeks, that were voluntarily prepared, even if the contents of the documents may be incriminating. A limited exception applies when possession or control of the document is the incriminating fact, rather than the incriminating statements in the documents. But that exception has no conceivable application to Zhang's communications with XMotors, nor has Zhang explained how it could apply to the documents related to his prosecution, all of which are presumably in the possession of his attorney-agent, who can be directed to produce them. And the exception also fails if the existence of the documents existence is already known, or if Zhang already disclosed the documents to someone else – both of which are true here. **Second**, Zhang claims that the protective order entered in his prosecution prohibits disclosure, yet the order applies at most to a subset of responsive documents – those produced by the government to Zhang and marked with a "confidential" legend.

Zhang has no proper objection to the subpoena, and the Court should compel him to comply with no further delay.

II.     **Factual Background**[1]

On July 9, 2018, non-party Xiaolang Zhang was charged with misappropriating trade secrets. According to the criminal complaint, Zhang worked for Apple's autonomous driving project. Turetzky Decl. Ex. 1 at 3-4 (Zhang criminal complaint). After returning from paternity leave, Zhang informed his supervisor at Apple that he was resigning to join XMotors, the United States subsidiary of a Chinese electric vehicle company. *Id.* at 4. Apple conducted an internal investigation and discovered that Zhang had used Apple Airdrop to transfer files to his wife's laptop. *Id.* 7-8. After Zhang agreed to allow a search, Apple discovered 40 gigabytes of data on that device, a majority of which was highly sensitive Apple trade secrets. *Id.*

On May 7, 2018, before being formally charged, Zhang joined XMotors. Xinzhou Wu Decl. ¶ 14 (Dkt. No. 45-1). While Zhang was working at XMotors, the government obtained a

---

[1] Pursuant to N.D. Cal. Civ. L.R. 37-2, the entirety of Tesla's requests and Zhang's objections are set forth in this section.

1  search warrant and interviewed Zhang.  Turetzky Decl. Ex. 1 at 11.  Shortly thereafter, Zhang
2  bought a one-way ticket to Beijing and was arrested by federal agents at San Jose International
3  Airport.  *Id.* at 12.  Sometime in summer 2018, XMotors produced documents to the United
4  States government in response to a grand jury subpoena.  Xinzhou Wu Decl. ¶ 14 (Dkt. No. 45-1).
5       Cao, the defendant in this case, was also an Apple employee until spring 2017.  In April
6  2017, Cao joined Tesla as an engineer, and in the summer of 2018 he was working on Tesla's
7  autonomous driving technology, Autopilot.  By summer 2018, Cao was also in discussions with
8  XMotors about job opportunities there.  Turetzky Decl. Ex. 2.  In July, when Zhang was arrested
9  and charged with stealing autonomous driving technology to take to XMotors, Cao followed the
10 news closely and was aware of the details.  Cao texted with a friend about news reports of the
11 indictment.  Nocon Decl. Ex. 1 (excerpts of the extracted texts in Chinese); Turetzky Decl. Ex. 3
12 (certification of translation), Ex. 4 (translated texts), Ex. 5
13 (https://www.theverge.com/2018/7/10/17556034/fbi-apple-trade-secrets-xpeng-self-driving).
14 Reacting to the story on July 11, 2018, Cao texted a friend "I guess they agreed on the price
15 before to get the documents."  *Id.*  At his deposition on January 7, 2020, Cao testified that he
16 remembered seeing a tweet that said "Moments B4 flight to Beijing, ex-Apple worker Xiaolang
17 Zhang nabbed by FBI San Francisco @ Fly SJC for stealing autonomous vehicle trade secrets
18 while on paternity leave, per USAO_NDCA.  Zhang told agents he intended to work for XMotors
19 global & Airdropped data to wife's laptop."  Turetzky Decl. Ex. 6 (Cao Tr. 259:16-262:14).  Cao
20 was aware of what Zhang did, how he did it, and where he had been employed.
21      Unbeknownst to Tesla at the time, by the time of Zhang's arrest, Cao had saved the
22 entirety of Tesla's Autopilot source code to zip files, and copied those files to his personal cloud
23 storage account and to his personal computers, in violation of Tesla policies.  Compl. ¶¶ 3, 32;
24 Answer ¶¶ 3, 32.  In November 2018, Cao was interviewing for a position as an autonomous
25 driving engineer at XMotors.  Compl. ¶¶ 32, 33; Answer ¶¶ 32, 33.  At around the same time, like
26 Zhang had done, Cao used Apple Airdrop to transfer the entirety of the Tesla Autopilot from his
27 Tesla-issued MacBook to the Apple iMac that he shared with his wife.  Farnham Decl. ¶¶ 18-19.
28 Cao then traveled to China in early December to interview with executives at XMotors' parent

1  company, Xpeng Motors.  Compl. ¶ 32; Answer ¶ 32.  Shortly after his return, and after obtaining
2  a lucrative job offer, Cao copied Tesla Autopilot source code to a portable thumb drive, even
3  though he had copies of the same files available to him on his work computer, home computers,
4  and via a remote server.  Turetzky Decl. Ex. 6 (Cao Tr. 140:9-24); Turetzky Decl. Ex. 12 (Cao's
5  Resp. to Rog. 2); Farnham Decl. ¶¶ 20-30.

6  On January 16, 2020, Tesla served a document subpoena on Zhang.  Turetzky Decl. Ex. 7.
7  The subpoena included two requests.

8  **Request No. 1:** All documents reflecting any communications between you and XMotors.

9  **Request No. 2:** All documents concerning any of the allegations at issue in the criminal
10 case against you captioned *United States v. Xiaolang Zhang*, Case Nos. 5:18-mj-70919-MAG,
11 5:18-cr-00312-EJD-1 in the United States District Court for the Northern District of California.
12 Turetzky Decl. Ex. 7.

13 The parties met and conferred and agreed to an extension of time for Zhang to respond on
14 February 18, 2020.  Turetzky Decl. ¶ 10.  During the parties' meet and confer, Zhang's counsel
15 indicated that Zhang would likely assert his Fifth Amendment right against self-incrimination in
16 response to the subpoena.  *Id.*  Zhang's counsel also indicated that Zhang would object to
17 producing any documents Zhang obtained from the government during discovery, citing the
18 protective order in Zhang's case.  *Id.*

19 Zhang responded to Tesla's subpoena on February 18, 2020.  *Id.* Ex. 8.  Zhang's response
20 stated, in full:

> Mr. Zhang hereby asserts his Fifth Amendment right not to produce the documents called for in the subpoena. (*See United States v. Hubbell*, 530 U.S. 27, 36-37 (2000) (reaffirming the "act of production doctrine" pursuant to which individuals may invoke Fifth Amendment privilege when compelled to turn over documents that are incriminating or may lead to inculpating evidence if the act of producing the documents itself implies an assertion of fact).)
>
> Further, Mr. Zhang is beholden to a Stipulated Interim Protective Order in the underlying criminal case. (*See* 5:18-cr-00312-EJD-1, Dkt. No. 12.)  To the extent that Mr. Zhang were otherwise able to produce documents, the Protective Order prevents Mr. Zhang from disclosing any relevant documents which were discovered to him by the Government in the criminal case.
>
> As a result, Mr. Zhang finds that there are no documents responsive to your subpoena that he can produce.

Case No. 19-cv-01463-VC                         4
PLAINTIFF TESLA, INC.'S MOTION TO COMPEL RE ZHANG DOCUMENT SUBPOENA

1   *Id.*

2   On March 31, 2020, Tesla informed Zhang that it would move to compel unless Mr.
Zhang would reconsider his position. *Id.* ¶ 12. Given the parties' previous meet and confer discussions, Tesla did not anticipate that Mr. Zhang would reconsider. *Id.* Nevertheless, Tesla invited Zhang's counsel to a telephonic meet and confer if Zhang wished to discuss the matter further. *Id.* Ex. 9.

Tesla also informed Zhang of the protective order entered in this case. *Id.* ¶ 13. Tesla asked Zhang's counsel to sign the protective order so Tesla's could serve him with a complete, unredacted copy of its motion. *Id.* On April 16, 2020, Zhang's counsel signed the protective order. *Id.* at Ex. 10.

**III.    Argument**

    **A.    Legal Standard**

"The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b)." *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2014 WL 2918218, at *2 (N.D. Cal. June 26, 2014). Rule 26(b) allows parties to obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"On a motion to compel compliance with a Rule 45 subpoena, the Local Rules in this District require a party to 'detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quoting N.D. Cal. Civil L.R. 37-2).

**B.     Tesla's Subpoena Seeks Only Relevant, Non-Privileged Documents and Zhang Makes No Argument Otherwise**

A matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Zhang does not object on relevance grounds, nor could he, as the documents sought are plainly relevant to Tesla's case against Cao, as discussed further below. Zhang also has raised no burden objection here, nor could he. Zhang has likely gathered and organized all non-privileged documents that would be responsive to Tesla's requests in preparation for his criminal trial. The undisputed lack of burden and clear relevance more than suffice to satisfy Rule 26(b).

During the same 8-month time span, Zhang and Cao, both former Apple engineers, both improperly copied and retained autonomous driving source code from their American employers, both applied for and obtained jobs at electric vehicle company XMotors, and both misappropriated those trade secrets. Moreover, Cao was specifically aware of Zhang's attempt and his methods, and used the same method, among others – Apple Airdrop – to move the files to a personal computer. Given the numerous similarities between the two cases, communications between Zhang and XMotors (Request No. 1) and documents in Zhang's possession relating to his prosecution (Request No. 2) are highly relevant and discoverable. Tesla is entitled to know whether Zhang, like Cao, transferred source code using other methods that were not publicly known, such as iCloud or thumb drives. Tesla is also entitled to know whether Cao and Zhang worked with the same recruiters, underwent a similar interview process, met with the same XMotors executives, and received similar compensation. The greater the similarity between the two cases, the less likely that those similarities can be dismissed as mere coincidences, and the more likely that they are the result of planning and coordination. And, to the extent that Zhang's documents shed light on the actors at XMotors, if any, who requested or were aware of the employees' theft of trade secrets, that information obviously is probative and relevant to Tesla's case.

**C.     The Fifth Amendment's "Act Of Production" Doctrine Does Not Apply**

Zhang's "act of production" objection should be overruled.

The contents of voluntarily prepared documents are not protected by the Fifth Amendment. *See United States v. Doe*, 465 U.S. 605, 612 n.10 (1984) ("If the party asserting the Fifth Amendment has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged"); *id*. at 618 ("the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind") (O'Connor, J., concurring).  There is a narrow exception to this rule; a person "may only refuse to produce documents on the basis of the Fifth Amendment privilege against self-incrimination if the act of producing the documents has an incriminating aspect." *Moore v. Gilead Scis., Inc.*, No. C 07-03850 SI, 2011 WL 5572975, at *7 (N.D. Cal. Nov. 16, 2011) (citing *United States v. Hubbell*, 530 U.S. 27, 36 (2000)).  This limited exception applies where the "act of production may implicitly communicate 'statements of facts' by compelling the person 'to admit that the papers existed, were in his possession or control, and were authentic.'" *Moore*, 2011 WL 5572975, at *7 (quoting *Hubbell*, 530 U.S. at 36).

In *Hubbell*, the defendant entered a plea agreement in which he promised to furnish the government with "full, complete, accurate, and truthful information" about matters relating to an investigation. *Hubbell*, 530 U.S. at 30.  The government later launched a separate investigation to determine whether Hubbell had complied with that promise and subpoenaed all documents relating to matters in the first investigation. *Id*.  Thus, merely by producing documents, Hubbell would potentially indicate that he had breached his plea agreement, such that the production itself would incriminate him. *Id*.

However, if only "the documents themselves contain incriminating assertions of fact or belief, the Fifth Amendment does not apply because 'the creation of those documents was not compelled.'" *Moore*, 2011 WL 5572975, at *7 (quoting *Hubbell*, 530 U.S. at 36).  Similarly, when "the party serving the subpoena already knows of the 'existence of,' 'access to,' and 'location' of certain documents, the witness' possession of those documents is a 'foregone conclusion,' and the privilege does not apply." *Xyngular Corp. v. Schenkel*, No. 13-mc-80123-EMC (JCS), 2013 WL 10733830, at *4 (N.D. Cal. Nov. 5, 2013) (quoting *Hubbell*, 530 U.S. at 36) (no "act of production" privilege when party seeking discovery already knew of the

documents' existence); *see also Fisher v. United States*, 425 U.S. 391, 411 (1976) (no Fifth Amendment privilege to producing documents where existence of, access to, and location of documents is a "foregone conclusion").

Zhang has not articulated how the act of producing documents to Tesla would incriminate him. Rather, it appears that, like in *Moore*, Zhang simply wants "to protect the incriminating content of the documents, which is not covered under the Fifth Amendment privilege." *Moore*, 2011 WL 5572975, at *7. As the *Moore* court explained, Zhang's "Fifth Amendment privilege does not protect him from producing documents in which the contents may be incriminating, but the act of producing them is not." *Id.* at *8.

Here, if Zhang's communications with XMotors incriminate him, they do so because of their contents, not because he possesses and can produce those communications. And if there are documents other than communications – such as the evidence demonstrating the manner of his misappropriation and the tools he used to accomplish it – those too are pre-existing evidence that incriminate by their substance, not the act of production.

Only continuing possession of Apple's trade secrets themselves arguably could incriminate Zhang through the act of production. But that is a foregone conclusion, as it was already publicly known that he voluntarily conveyed that information to Apple during its investigation, and presumably has surrendered it yet again to the government pursuant to a search warrant. He can claim no Fifth Amendment prejudice by disclosing to Tesla that which has already been disclosed. *See Fisher*, 425 U.S. at 411; *Xyngular Corp.*, 2013 WL 10733830, at *4.

### D. The Zhang Protective Order Does Not Preclude Compliance With the Subpoena

The protective order in the Zhang prosecution prohibits Zhang from producing to Tesla documents produced to him by the government that were designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Turetzky Decl. Ex. 11 (Zhang PO at ¶ 3).

But Zhang's blanket objection covers too much, as Tesla's subpoena seeks documents that do not qualify under the protective order. For example, if Zhang possesses communications between himself and XMotors that he did not obtain from the government through discovery,

those communications are responsive and not covered by the protective order. Similarly, if he possesses documents relating to the allegations in his criminal case that he did not obtain from the government through discovery, those too should be produced. And, if he obtained any documents from the government through discovery that the government did not designate as Confidential or Highly Confidential, those documents can be produced as well.

In short, the protective order may bar Zhang from producing some responsive documents, but some is not all. Any responsive documents not obtained from the government in discovery, or not designated by the government as Confidential or Highly Confidential, should be produced.

### IV.   Conclusion

For the reasons set forth above, the Court should overrule Zhang's objections, Tesla's motion to compel should be granted, and Zhang should be ordered to respond to Tesla's subpoena and produce responsive documents unless they were produced to him by the government in his criminal prosecution and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL".

Respectfully submitted,

THE NORTON LAW FIRM PC

Date: April 17, 2020

By: /s/ Fred Norton
Fred Norton (SBN 224725)
Bree Hann (SBN 215695)
Matthew W. Turetzky (SBN 280997)
THE NORTON LAW FIRM PC
299 Third Street, Ste 106
Oakland, California 94607
Telephone: (510) 906-4900
Fax: (510) 906-4910
fnorton@nortonlaw.com
bhann@nortonlaw.com
mturetzky@nortonlaw.com

*Attorneys for Plaintiff*
TESLA, INC.