1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TESLA, INC., a Delaware corporation, | Case No.  19-cv-01463-VC-KAW |
| *Plaintiff*, | **JOINT DISCOVERY LETTER OF PLAINTIFF TESLA, INC. AND THIRD PARTY X-MOTORS.ai. INC. (FORENSIC IMAGES)** |
| v. | |
| GUANGZHI CAO, an individual, | |
| *Defendant*. | |

Counsel for Tesla and counsel for third party subpoena respondent XMotors.ai. Inc. have met and conferred telephonically prior to filing this joint letter, most recently on June 17, 2020. Counsel for Defendant Guangzhi Cao participated in some of those meet and confer sessions as well.  Undersigned counsel hereby attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter.

THE NORTON LAW FIRM PC

By:   /s/ Fred Norton
Fred Norton (SBN 224725)

*Attorneys for Plaintiff*
TESLA, INC.

RIMON, P.C.

By:   /s/ Scott Raber
Scott Raber (SBN195924)

*Attorneys for Third Party*
X-MOTORS.ai. INC.

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  June 19, 2020

By:   /s/ Fred Norton
Fred Norton

**Nature of the Dispute and Pertinent Factual Background**

This trade secret case involves the alleged misappropriation of Tesla trade secrets – Tesla's autonomous driving source code – by Guangzhi Cao, a former Tesla engineer who now works at XMotors. On January 17, Tesla served a subpoena on XMotors seeking, among other things, "a copy of a forensic image of the work computers issued by [XMotors] to" people with whom Cao worked at XMotors. *See* Attachment 1 (Subpoena, Req. No. 18). XMotors moved to quash that subpoena, after asserting objections. *See* Attachment 2 (Objections); Dkt. 44, 48, 59-5, 62. On May 27, Judge Chhabria entered an order denying XMotors' motion to quash as to Request No. 18. *See* Attachment 3 (Order). Tesla and XMotors disagree about the form of XMotors' compliance with Judge Chhabria's order as to Request No. 18. The parties' respective positions are set forth below.

**Tesla's Position**

Tesla's position is the same as Judge Chhabria's: "XMotors must also produce the requested forensic images." Att. 3 at 1. XMotors refuses to comply with that unambiguous command. Instead, XMotors wants to conduct a privilege review (which Tesla does not oppose) and then produce the forensic images to a third-party neutral, who would then allow Tesla and its experts to receive only specific files that Tesla identifies in advance – *if* XMotors does not object. Alternatively, XMotors itself would decide what it is relevant, and would produce what it calls a "forensic blowback," a hollowed-out production that omits any file XMotors considers privileged, "sensitive," "superfluous," or "irrelevant." XMotors is merely relitigating the motion to quash, which it lost. XMotors did not seek reconsideration. None of its arguments should be considered at all, but none have merit in any event.

*First*, XMotors argues Tesla should not be able to see irrelevant or sensitive information on the forensic images. But courts frequently direct production of forensic images in trade secret cases that involve allegations of downloading. *See, e.g.*, *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006) ("allegations that a defendant downloaded

1

trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain a mirror image of the computer's hard drive").  XMotors' argument now is the same one XMotors made in resisting the production of forensic images in the first place.  Dkt. 44 at 8-9, 17; Dkt 62 at 8-9.  As Tesla responded, "[i]t would be inappropriate and counter-productive to allow XMotors to remove 'irrelevant' files from forensic images, and genuine privilege concerns can be met through the use of the Court's form protective order and third-party neutrals."  Dkt. 59-5 at 15.  Judge Chhabria already rejected XMotors' contentions when he ordered XMotors to "produce the requested forensic images," without qualification.  Att. 3 at 1.  To the same effect, XMotors complains that allowing Tesla to search the laptop images for files Tesla deems relevant is "overbroad."  But that again is the argument that Judge Chhabria overruled.

*Second*, Tesla has no interest in searching for irrelevant or personal information that has no bearing on the ultimate issues in this case.  But Tesla does object to XMotors' efforts to appoint itself referee of what is relevant and what is not, and to increase delays and costs by forcing Tesla to conduct its analyses through a third-party neutral rather than Tesla's retained experts.  XMotors' position is that, *after* Tesla identifies files (that Tesla cannot see) as meriting review, XMotors would still "have the opportunity to verify whether other material should also be withheld for confidentiality or overbreadth concerns and object to its production if necessary." After Tesla waited for XMotors to review thousands of files, it presumably would have to meet and confer over XMotors' objections, and then bring any dispute back to the Court for resolution.  That process would be unworkable if time were a non-issue.  But time is an issue. Tesla served its subpoena on January 17, 2020.  It is now June 19.  The deadline for expert disclosures is August 21.  Requiring Tesla to conduct complex, iterative expert analyses through an intermediary, without direct access to the relevant material, guarantees delay and prejudice.

*Third*, only *after* Judge Chhabria's order, and even *after* it promised prompt production of the forensic images redacted only for privilege, XMotors reversed itself and claimed some or all of the laptops may contain some source code.  (Even now, it apparently is unable to say which

ones or how many.)  XMotors raised no such concerns in its motion.  Instead, XMotors argued

Tesla had all the source code it needed because, previously, "XMotors provided a forensic image

of the entire hard drive of the laptop computer that XMotors had issued to Dr. Cao" which

included "a complete copy of XMotors source code repositories that Dr. Cao had downloaded

onto his XMotors-issued laptop."  Dkt. 44 at 10.  Only now that it has been ordered to produce

additional images does XMotors profess any concern.  If XMotors really did have legitimate

(belated) concerns about producing source code or other sensitive information, they are resolved

by the protective order XMotors agreed to.  Dkt. 48-1 at ¶ 4; Dkt. 22; *see also* Att. 2 at 1 ("Of

course, this information is subject to the protective order in this case."); *Apple Inc. v. Samsung

Elecs. Co.*, 2013 WL 3246094, at *26 (N.D. Cal. June 26, 2013) (rejecting Apple's

confidentiality and security objections to producing source code; Apple's interests were

"sufficiently protected" by stipulated protective order).

   *Fourth*, the necessary analysis is more than just running searches and reviewing files.  In

addition to reviewing conventional documents, Tesla's experts will examine USB logs, the use

of data transfer mechanisms, and forensic artifacts that indicate data deletion.  If Tesla is

required to do this iterative analysis through a neutral, each step will necessarily be slower, more

cumbersome, and more costly than direct review.

### Third-Party XMotors.ai's Position

   Judge Chhabria's Order requires XMotors to produce forensic images of laptops

belonging to eleven XMotors employees, but it does not address *how* those images should be

reviewed. Nor is XMotors "relitigating" anything: this issue was not before the Court on

XMotors' motion to quash, and neither the Order nor the Amended Protective Order ("APO")

address the potential for overreach by Tesla in reviewing the images now that it has been allowed

to receive them. Although Tesla presumably seeks these images to verify how the machines have

been used by their custodians at a high level (*i.e.,* examining log, connection, and file histories),

absent reasonable constraints Tesla will also have unfettered access to *all* individual files

contained on the computers, regardless of their relevance or sensitivity. Tesla offers no justification for such direct access in the first instance. *See Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 WL 5281629, at *6-7 (N.D. Cal. Oct. 22, 2018) (disallowing direct access to forensic images).

Thus, XMotors notified Tesla of two primary concerns relating to the production of the laptop images: 1) extracting attorney-client privileged information, and 2) minimizing or eliminating the production of XMotors' and its employees' confidential or private information which has no bearing on Tesla's claims (such as employment terms, financial information, pricing information). In trying to resolve this problem, XMotors informed Tesla's counsel that removing privileged or irrelevant sensitive information from the forensic image would alter the image from its original state.

Accordingly, XMotors proposed that it could produce "forensic blowbacks" for the laptops after the privileged and confidential information was removed. The forensic blowbacks would still have all the data and metadata for the active files remaining on the laptop. Files such as unified log files, which show connections to the laptop would still be intact, but the "blowback" would not show unallocated space. An original forensic copy of the image would remain available to resolve any subsequent concerns. Tesla rejected this approach.

Alternatively, XMotors proposed producing a copy of the original forensic image of the laptops to a third party neutral forensic expert, who would serve as the gatekeeper for Tesla's review of the images produced. *See, e.g., Henson, supra,* at *7. Under that proposal, Tesla would have the ability to *confidentially* instruct the neutral as to what content searches Tesla was interested in, and before sensitive files were produced to Tesla, files already marked as privileged would be withheld from production to Tesla. XMotors would also have the opportunity to verify whether resulting search results should also be withheld for confidentiality or overbreadth concerns and object to their production if necessary.

To avoid the needless production of non-privileged but sensitive company information XMotors also proposed that the parties agree to search terms, insofar as Tesla may wish to search the laptop images for particular files associated with certain terms—just like typical ESI discovery protocols requiring parties to agree on reasonable search terms, to avoid unfettered snooping or overbroad searches. Tesla has inexplicably refused this approach as well—thereby directly calling into question what it intends to search for in this process, and whether such searches will be undertaken for purposes legitimately related to the litigation.

This is not an idle concern for XMotors: for example, Tesla previously issued document requests concerning dozens of Tesla employees with no connection to Tesla's claims in this matter (that it ultimately retracted). Under Tesla's proposed approach, it could admittedly search all of the forensic images for whatever Tesla pleased. This is patently overbroad, particularly given the fact that there is no evidence suggesting that XMotors received any confidential Tesla information from Dr. Cao. Tesla's current insistence that it be allowed to conduct unilateral searches of XMotors' machines, using search terms known only to it, begs the question: what does Tesla want to hide in this process that it is so afraid of disclosing its search terms and parameters up front, or affording XMotors the opportunity to insure that material of dubious relevance is not culled by Tesla?

XMotors does *not* propose to treat Cao differently from Tesla during the screening process, nor has XMotors already shared the subject images with Cao. This is simply a red herring. Lastly, there is nothing about XMotors' proposal that would require Tesla to waive any privilege or work product protections. Accordingly, XMotors requests that the Court direct review of the laptop images to occur under the auspices of a forensic neutral in the first instance, following agreement upon reasonable search terms by the parties, and that XMotors be provided the opportunity to review and contest the production of privileged and sensitive competitive/private information from the images before they are produced to Tesla. This does

not prejudice Tesla in the slightest, and provides XMotors with the modicum of protection that is warranted.

ATTACHMENT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Northern District of California

| | |
|---|---|
| TESLA, INC., a Delaware corporation, | ) |
| *Plaintiff* | ) |
| v. | ) |
| GUANGZHI CAO, an individual, | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   3:19-CV-01463-VC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Xmotors.ai Inc.
850 N Shoreline Blvd., Mountain View, CA 94043

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see Schedule A.

| Place: The Norton Law Firm PC<br>299 Third Street, Suite 106<br>Oakland, CA 94607 | Date and Time:<br><br>01/31/2020 5:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/17/2020

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Matt Turetzky
_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Tesla, Inc.
_____, who issues or requests this subpoena, are:
Matt Turetzky, The Norton Law Firm PC, 299 Third Street, Ste. 106, Oakland, CA 94607; (510) 906-4900;
mturetzky@nortonlaw.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

1
2
3
4
5
6
7
8
9
10
11
12

## <u>DEFINITIONS</u>

13
14
15
16
17
18
19
20      5.     "SOURCE CODE" means computer code, including comments, in an
21 uncompiled, human-readable programming language that, once compiled into object code,
22 provides instructions to a computer.
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## **REQUESTED DOCUMENTS**

24  **Request No. 15:** All SOURCE CODE drafted by, tested, or used by XMOTORS for its

25  autonomous vehicle technology and driver-assistance system from November 1, 2018 to

26  present, including but not limited to all drafts of such SOURCE CODE and all revisions,

27  fixes, and updates to such SOURCE CODE.

28

Case No. 19-cv-01463-VC                5

SCHEDULE A TO SUBPOENA ISSUED TO XMOTORS.AI INC. BY TESLA, INC.

1   **Request No. 16:** Any and all version control logs, revision logs, or other DOCUMENTS

2   reflecting revisions, edits, or changes to XMOTORS' SOURCE CODE used for

3   XMOTORS' autonomous vehicle technology and driver-assistance system from

4   November 1, 2018 to present, including, but not limited to, DOCUMENTS indicating that

5   XMOTORS' SOURCE CODE was revised, edited, or changed; DOCUMENTS showing

6   the nature of such revisions, edits, or changes; DOCUMENTS reflecting the date of such

7   revisions, edits, or changes; and the author or authors of such revisions, edits, or changes.

8   **Request No. 17:** All SOURCE CODE that Guangzhi Cao edited, reviewed, wrote,

9   authored, supplied, tested, evaluated, contributed to, advised about, offered to, presented

10  to, transmitted to, communicated to, made available to, produced to, or provided to

11  XMOTORS.

# ATTACHMENT 2

ZHENG LIU (SBN: 229311)
zheng.liu@rimonlaw.com
RIMON P.C.
800 Oak Grove Avenue Suite, 250
Menlo Park, California   94025
Telephone/Facsimile: (650) 461-4433

SCOTT R. RABER (SBN 194924)
scott.raber@rimonlaw.com
RIMON P.C.
One Embarcadero Center, Suite 400
San Francisco, California   94111
Telephone:  415.683.5472
Facsimile:   800.930.7271

Attorneys for Third Party XMOTORS.ai. INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>        v.<br><br>GUANGZHI CAO, an individual<br><br>              Defendant. | Case No. 19-cv-01463-VC<br><br>**THIRD PARTY XMOTORS.ai. INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF TESLA, INC.'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** |

t

## OBJECTIONS TO DEFINITIONS

1.      XMotors objects to the definition of "XMotors" insofar as it purports to include additional persons, corporate entities, or affiliates of XMotors that are not under XMotors' control and/or are wholly separate entities.

2.      XMotors objects to the definition "PERSON" insofar as that definition purports to include individuals, persons, firms, associations, partnerships, organizations, joint ventures, businesses, trusts, limited liability companies, corporations, or other entities that are not subject to XMotors' control.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

**Request No.  15:**  All SOURCE CODE drafted by, tested, or used by XMOTORS for its autonomous vehicle technology and driver-assistance system from November 1, 2018 to present, including but not limited to all drafts of such SOURCE CODE and all revisions, fixes, and updates to such SOURCE CODE.

1   **RESPONSE TO REQUEST NO. 15:**

2       XMotors objects to this request as overly broad, unduly burdensome, and seeks confidential,

3   proprietary information that is not relevant to any party's claims or defenses and proportional to the

4   needs of the case.  XMotors objects to this request on the ground that there is no evidence suggesting

5   that XMotors, which is not a party to this matter, has ever been in possession of any Tesla confidential

6   information that would warrant receipt by Tesla, a direct competitor of XMotors, of XMotors' source

7   code. XMotors further objects to this request on the ground that it seeks information already in the

8   possession, custody, or control of the parties, including in document productions previously made by

9   XMotors in response to earlier subpoenas issued by Tesla in this matter.

10  **Request No. 16:**  Any and all version control logs, revision logs, or other DOCUMENTS reflecting

11  revisions, edits, or changes to XMOTORS' SOURCE CODE used for XMOTORS' autonomous vehicle

12  technology and driver-assistance system from November 1, 2018 to present, including, but not limited

13  to, DOCUMENTS indicating that XMOTORS' SOURCE CODE was revised, edited, or changed;

14  DOCUMENTS showing the nature of such revisions, edits, or changes; DOCUMENTS reflecting the

15  date of such revisions, edits, or changes; and the author or authors of such revisions, edits, or changes.

16  **RESPONSE TO REQUEST NO. 16:**

17      XMotors objects to this request as overly broad, unduly burdensome, and seeks confidential,

18  proprietary information that is not relevant to any party's claims or defenses and proportional to the

19  needs of the case. XMotors objects to this request on the ground that there is no evidence suggesting that

20  XMotors, which is not a party to this matter, has ever been in possession of any Tesla confidential

21  information that would warrant receipt by Tesla of the materials sought by this request. XMotors further

22  objects to this request on the ground that it seeks information already in the possession, custody, or

23  control of the parties, including in document productions previously made by XMotors in response to

24  earlier subpoenas issued by Tesla in this matter.

25      Subject to the general and specific objections above, and subject to appropriate protocols,

26  XMotors will produce all records of submission of source code and revisions/editing of source code by

27  Dr. Cao only, for the period of time of January 14, 2019 to March 21, 2019, when Dr. Cao had access to

28

XMOTORS.ai. INC.'S OBJECTIONS & RESPONSES TO PLAINTIFF'S DOCUMENT SUBPOENA

XMotors' source code depository system.

**Request No. 17:**  All SOURCE CODE that Guangzhi Cao edited, reviewed, wrote, authored, supplied, tested, evaluated, contributed to, advised about, offered to, presented to, transmitted to, communicated to, made available to, produced to, or provided to XMOTORS.

**RESPONSE TO REQUEST NO. 17:**

XMotors objects to this request as overly broad, unduly burdensome, and seeks confidential, proprietary information that is not relevant to any party's claims or defenses and proportional to the needs of the case. XMotors further objects to this request on the ground that it seeks information already in the possession, custody, or control of the parties, including in document productions previously made by XMotors in response to earlier subpoenas issued by Tesla in this matter.

Subject to the general and specific objections above, and subject to appropriate protocols, XMotors will produce all records of submission of source code and revisions/editing of source code by Dr. Cao only, for the period of time of January 14, 2019 to March 21, 2019, when Dr. Cao had access to XMotors' source code depository system.

**Request No. 18:**  A copy of a forensic image of the work computers issued by YOU to any of the following PERSONS and used by such PERSONS from November 1, 2018 to present: Xinzhou Wu, Zhiguang Xiao, Junli Gu, He Xiaopeng, Brian Gu, any PERSON employed by YOU who reported to Guangzhi Cao, and any PERSON employed by YOU to whom Guangzhi Cao reported.

**RESPONSE TO REQUEST NO. 18:**

XMotors objects to this request as overly broad, unduly burdensome, and not seeks confidential, proprietary information that is not relevant to any party's claims or defenses and proportional to the needs of the case.  XMotors further objects to this request to the extent it seeks evidence from third-party entities that are not subject to this Court's jurisdiction. XMotors further objects to this request to the extent it seeks evidence that is not in XMotors' custody, possession or control. XMotors further objects to this request insofar as it purports to seek information protected from disclosure by the attorney-client privilege, work product doctrine, or other applicable privileges. XMotors objects to this request insofar as it seeks private, confidential information protected from disclosure by the California

1 | Constitution, statutory protections, and common law rights to privacy. XMotors objects to this request

2 | on the ground that there is no evidence suggesting that XMotors, which is not a party to this matter, has

3 | ever been in possession of any Tesla confidential information that would warrant receipt by Tesla—a

4 | direct competitor of XMotors—of the materials sought by this request, nor does the Complaint contain

5 | any allegations concerning the use of such material during the period of Cao's employment by XMotors.

6 | Propounding Party has repeatedly proposed no compromise solution that would narrow the

7 | scope of its request to review entire images of multiple XMotors employees work computers, and

8 | instead has insisted on the untargeted production of all data thereon.

9 | at is not relevant to any party's claims or defenses and proportional to the needs of the case.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

XMOTORS.ai. INC.'S OBJECTIONS & RESPONSES TO PLAINTIFF'S DOCUMENT SUBPOENA

ATTACHMENT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TESLA, INC.,

               Plaintiff,

      v.

GUANGZHI CAO,

               Defendant.

Case No.  19-cv-01463-VC

**ORDER RE PENDING MOTIONS**

Re: Dkt. Nos. 44, 46, 51, 56, 59, 69

1. XMotors's motion to quash is granted in part and denied in part. XMotors must produce the requested source code and source code logs, and these topics may be discussed in the 30(b)(6) deposition. This information is relevant to Tesla's claim that Cao disclosed Tesla's trade secrets to XMotors. Of course, this information is subject to the protective order in this case. Tesla and XMotors are instructed to meet and confer regarding whether a neutral third-party should examine the source code in the first instance.

XMotors must also produce the requested forensic images, but it does not need to provide images of the computers of persons not employed by XMotors. Tesla has not demonstrated that XMotors has legal control over those computers. *See In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999).

XMotors need not produce the grand jury materials related to Mr. Zhang. The relevance of these materials to Tesla's claims against Cao is speculative and tenuous, and Tesla has not shown that obtaining these materials at this time is proportional to the needs of the case.

2. Tesla's administrative motion to file a sur-reply is denied.

3. The administrative motions to file under seal are denied. Tesla must re-file public and

unredacted versions of its opposition brief and the relevant deposition testimony on the docket within 7 days of this order.

      4. Tesla's motion to compel is denied. As previously discussed, information related to Mr. Zhang's conduct is of only speculative relevance to Tesla's claims against Cao. Discovery of this information is not proportional to the needs of this case at this time, especially given the potential for interference with an ongoing criminal prosecution, a concern raised by the U.S. Attorney. Dkt. 67-7. Furthermore, the striking breadth of Tesla's subpoena requests entitles Zhang to raise his Fifth Amendment privilege against self-incrimination. *See In re Grand Jury Subpoena*, 383 F.3d 905, 911 (9th Cir. 2004). For example, Tesla does not confine its requests to information already possessed by the government, so Zhang could be forced to identify and produce new incriminating information.

      **IT IS SO ORDERED.**

Dated: May 27, 2020

VINCE CHHABRIA
United States District Judge