UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>   *Plaintiff*,<br><br>v.<br><br>GUANGZHI CAO, an individual,<br><br>   *Defendant*. | Case No. 19-cv-01463-VC<br><br>**JOINT DISCOVERY LETTER OF PLAINTIFF TESLA, INC. AND THIRD PARTY XMOTORS.AI** |

Counsel for Tesla and counsel for third party subpoena respondent XMotors.ai have met and conferred telephonically prior to filing this joint letter, most recently on July 15, 2020. Counsel for Defendant Guangzhi Cao participated in those meet and confer sessions as well. Undersigned counsel hereby attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter.

THE NORTON LAW FIRM PC

By: */s/ Fred Norton*
Fred Norton (SBN 224725)

*Attorneys for Plaintiff*
**TESLA, INC.**

RIMON, P.C.

By: */s/ Scott Raber*
Scott Raber (SBN194924)

*Attorneys for Third Party*
**XMOTORS.AI**

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: July 22, 2020

By: */s/ Scott Raber*
    Scott Raber

**Tesla's Position**

XMotors.ai, Inc. ("XMotors") has twice been ordered to produce forensic images of employees' computers, without removing anything but privileged files. Still it has not complied. Instead, in defiance of the Court's orders, XMotors keeps looking for excuses to delay. The Court should put an end to these games.

On January 17, 2020, plaintiff Tesla, Inc. served a subpoena on third party XMotors, the employer of defendant Guangzhi Cao. The subpoena sought, among other things, forensic images of laptops for Cao's co-workers at XMotors. XMotors moved to quash that portion of the subpoena, and on May 27, 2020, Judge Chhabria denied the motion and held that "XMotors must also produce the requested forensic images." Dkt. 74 at 1.

But XMotors did ***not*** produce the forensic images as Judge Chhabria ordered. Instead, XMotors took the position that it must remove files that contained "XMotors' and its employees' confidential or private information," to which Tesla objected Dkt. 78 at 4.[1] Alternatively, XMotors proposed it would turn the forensic images over to a neutral, who would produce data to Tesla based on search terms only after XMotors had an opportunity to object. *Id.* Tesla objected that Judge Chhabria had already decided this question and that XMotors was merely relitigating the motion to quash. *Id.*

On June 29, Magistrate Judge Westmore rejected XMotors' position, agreeing that XMotors' demand to remove files was inconsistent with Judge Chhabria's order: "The presiding judge, however, ordered the production of the requested forensic images without limitation." Dkt. 80 at 2. The same was true of XMotors' demand for review by a neutral. *See id.* at 2 n.1 (noting Judge Chhabria directed the parties to meet and confer over a discovery neutral solely with respect to source code). Accordingly, the Court ordered XMotors "to produce the forensic images after conducting a privilege review." *Id.*

Still, XMotors did ***not*** produce the laptop images. After receiving the Court's June 29 order, XMotors took the position that it needed to remove ***source code files*** as well as privileged material. Even though the June 29 order reconfirmed that Judge Chhabria's suggestion of a third party neutral did

---

[1] Contrary to XMotors' claim below, Tesla ***always*** agreed that XMotors could remove privileged material. *See* Dkt. 78 at 2 ("XMotors wants to conduct a privilege review, which Tesla does not oppose"); Dkt. 59-5 at 15 (Tesla Opp. to Mot. to Quash) (suggesting ways to deal with privilege claims).

not apply to forensic images, XMotors argued in meet and confer that the order allowed it to remove any source code on the laptops to be examined by the neutral. XMotors also claimed it needed to seek "clarification" of the Court's June 29 order because it supposedly did not know how to remove privileged material and produce a forensic image. After Tesla suggested the parties' technical consultants speak directly, the protocol to remove privileged material was resolved, but XMotors still has not produced any image for laptops that contained privileged material or that contain source code. (It has produced five images for laptops that contained neither; it is in the process of producing laptops that held privileged material but not source code, and it still is withholding five images with source code.)[2] Furthermore, XMotors admitted in meet and confer that removing source code files "may add processing time as there are thousands of XMotors source code files on some of the laptops," but it has not explained how much additional time. Tesla objects to the added delay, and objects that removing "thousands" of source code files cannot be accomplished without the loss of important forensic data.

In an effort to avoid the effect of the May 27 and the June 29 orders, XMotors argues that "treating the [May 27] Order as requiring production of the forensic images with the source code included would conflict with the Court's [June 29] ruling requiring the forensic neutral to oversee the source code inspection 'in the first instance.'" Too cute. Judge Chhabria's May 27 order directed the production of the forensic images "without limitation." If there were a "conflict" between the May 27 order and the June 29 order, the presiding judge's order would have to control. But there is no conflict. When Judge Chhabria denied XMotors' motion to quash, and ordered XMotors to produce forensic images, he well knew that the images could contain source code. Judge Chhabria knew this because XMotors itself argued at length that Tesla already had one complete copy of XMotors source code on the forensic image of Cao's laptop that XMotors produced in 2019. Dkt. 45 at 10, 12, 16; Dkt. 63 at 3, 7. Nonetheless, he ordered the production of the forensic images "without limitation." If XMotors was confused by that order, it needed to seek reconsideration, not wait two months to seek reversal of Judge Chhabria's unambiguous order. Meanwhile, the defendant – XMotors employee Cao – takes the position that the parties should be able to review both Tesla source code that Cao downloaded to his own

---

[2] To excuse its ongoing delay, XMotors says Tesla took five days – from 4:30 pm on Friday July 1 to Wednesday morning July 6 – to provide a shipping address for the initial five images. This is silly.)

devices and the XMotors source code on Cao's XMotors laptop *without any neutral involvement at all*.

There are no new arguments or issues.  Judge Chhabria *already* ordered XMotors to produce the forensic images, *see* Dkt. 74 at 1, and to do so "without limitation," Dkt. 80 at 2.  XMotors did not seek reconsideration of Judge Chhabria's order.  Magistrate Judge Westmore *already* ordered XMotors "to produce the forensic images after conducting a privilege review."  Dkt. 80 at 2.  XMotors did not file an objection to that order under Fed. R. Civ. P. 72(a), and the deadline to do so was July 13.

XMotors' continuing delay significantly prejudices Tesla's ability to conduct the deposition of XMotors CEO Xinzhou Wu (scheduled for July 30 but his laptop has not been produced), to conduct the 30(b)(6) deposition (scheduled for July 29 but neither source code, nor source code logs, nor laptops containing source code have been produced), and to complete expert analyses of the images themselves (deadline of August 21, subject to Tesla's imminent motion to continue).

The issue now is not whether XMotors must produce the forensic images without removing source code.  That is twice decided.  The issue now is whether the Court should hold XMotors in contempt under Fed. R. Civ. P. 45(g) for XMotors' willful failure to comply.   It should.

**Third-Party XMotors.ai's Position**

Through this letter brief, XMotors seeks clarification of the Court's June 29, 2020 Order Regarding Discovery Letters (the "Order) with respect to forensic images of laptop computers to be produced by XMotors and how *source code* on them will be handled going forward. (ECF 80) Contrary to Tesla's contention, this issue has not been addressed by either of the Court's prior rulings.

The Order directs XMotors "to produce the forensic images after conducting a privilege review" but does not address how XMotors could actually produce the forensic images without turning over privileged material or source code contained on them. Tesla and XMotors have since come to an agreement whereby privileged files will be extracted from the laptop images before they are turned over to Tesla, itemized by XMotors' vendor, and the original images containing the privileged material *in situ* will be maintained, in the event there is any concern about the integrity of the images or what was held back for privilege.

However, the same issue has also arisen with respect to XMotors' source code—which the Court held must be reviewed by a third-party neutral "in the first instance." (ECF 80, at 2:13-15 & n. 1) At

least five of the fourteen XMotors laptop images from eleven employees contain source code files. In ruling that the forensic images should be produced without limitation, this Court also observed that "the presiding judge did contemplate a third-party neutral as to the source code." XMotors respectfully submits that treating the Order as requiring production of the forensic images with the source code included would conflict with the Court's ruling requiring the forensic neutral to oversee the source code inspection "in the first instance"—because Tesla would have unfettered access to the source code files on those computers, outside the auspices of the required neutral.

To ameliorate that problem, XMotors has proposed the same solution that will be employed for the privileged material: in particular, its forensic consultant will "redact" the source code files from the images and provide those files separately to the neutral. At the same time, XMotors will maintain original versions of the imaged laptops should any questions arise regarding the forensic integrity of the separated source code files provided to the neutral, or the laptops themselves.

Tesla's objections to this path forward are not well-taken. First, Tesla argues that XMotors should have objected to the Order pursuant to Fed. R. Civ. P. 72. However, that assumes this Court reached a decision on that issue. As noted above, XMotors disagrees—and, in any event, believes there was enough ambiguity to provide this Court the opportunity to clarify the Order's intended scope before potentially pursuing an objection before the presiding judge.[3]

Second, Tesla incongruously demands that it have direct access to the source code on the images—even though the Court has expressly disallowed such access to equivalent source code produced in response to the other challenged requests (Req. Nos. 15-18). This would allow Tesla to do an end-run around the forensic neutral's required oversight prescribed by the Court's Order. As a matter of proportionality and consistency, XMotors submits that its suggested approach will provide Tesla with

---

[3] Nor did Judge Chhabria address the issue of source code on the imaged devices before referring the matter to this Court—while simultaneously directing the parties to meet and confer regarding source code review and production. (ECF 74) Tesla's purported clairvoyance about what Judge Chhabria "knew" about the forensic images is nonsensical and wholly unsupported: as Tesla well knows, XMotors voluntarily provided Cao's laptop in *August 2019*, reflecting code on his machine as of March 2019 (when he was placed on leave), in an effort to demonstrate no misappropriation. XMotors most certainly did not agree to the unfettered production and review of other employees' laptops at that time or thereafter, and was not aware of the extent to which source code might be present on other devices called for by later discovery requests.

all of the access it needs. Tesla has not articulated, and cannot articulate any reason why source code on laptop images should be treated any differently from other source code repository files subject to the forensic neutral's oversight.

Faced with these shortcomings, Tesla has the temerity to accuse XMotors of "contempt" for having asserted its rights, and disingenuously accuses XMotors of delay actually occasioned by Tesla's own actions (and inaction). For example, Tesla would apparently have the Court believe that it agreed to the removal of privileged material from the images weeks ago, in June, before the parties' prior joint briefing. In fact, Tesla did *not* agree to the removal of privileged material from the imaged laptops until the parties met and conferred *after* the Order, on July 1. And, even then, Tesla did not actually agree to a protocol for the removal of such information until *today, July 22*.

Similarly, during the same meet and confer call on July 1, XMotors informed Tesla that it had several laptop images containing no source code or privileged material that it was ready to produce, and asked where they should be sent. Tesla remained silent for five days after promising to provide shipping information, and only provided that information after XMotors again followed up. Moreover, XMotors informed Tesla about source code found on some of the imaged laptops as soon as it had confirmation of the issue.

Thus, the only delay has been occasioned by Tesla's unfounded insistence that source code on the imaged laptops should somehow be treated to a different standard from the rest of the source code provided for inspection. The laptop images containing source code should be subject to the same review protocol standards set forth by the Court in connection with the parties' Joint Discovery Brief of Tesla and XMotors. (ECF 81)