UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>GUANGZHI CAO, an individual,<br><br>*Defendant.* | Case No. 19-cv-01463-VC<br><br>**JOINT DISCOVERY LETTER BRIEF OF PLAINTIFF TESLA, INC. AND DEFENDANT GUANGZHI CAO TO COMPEL TESLA TO PRODUCE WITHHELD INTERVIEW SUMMARIES**<br><br>Judge:     Hon. Kandis A. Westmore |

Counsel for Tesla and counsel for Defendant Guangzhi Cao have met and conferred telephonically prior to filing this joint letter, most recently on Monday, November 16, 2020. Undersigned counsel hereby attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter.

| | |
|---|---|
| THE NORTON LAW FIRM PC | CONRAD & METLITZKY LLP |
| By: /s/ Fred Norton<br>Fred Norton (SBN 224725) | By: /s/ Mark Conrad<br>Mark Conrad (SBN 255667) |
| *Attorneys for Plaintiff*<br>**TESLA, INC.** | *Attorneys for Defendant*<br>**Guangzhi Cao** |

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 20, 2020         By:    /s/ *Mark R. Conrad*
                                                    Mark R. Conrad

**Defendant Cao's Position.** This motion is to compel the production of approximately thirty documents comprising notes and summaries of witness interviews by internal investigators at Tesla, over which Tesla has affirmatively and unambiguously waived any applicable claim of privilege.

### I.     Factual Background

*Tesla's Investigation.* In early 2019, Tesla investigated the circumstances of Guangzhi Cao's resignation and separation from the company. Its investigators conducted 14 employee interviews. Investigators kept notes and created summaries of the interviews. These summaries—or "investigative actions," as Tesla's investigators called them—describe "substantive facts of the interview," were addressed to and stored in an investigation case file as a matter of course, and were created as part of a "regular practice" by Tesla's professional investigators. *See* Ex. A at 108:10-111:25.

*Tesla's Work Product Waiver.* During discovery, Cao asked for "documents reflecting Tesla's investigation into the alleged misappropriation of trade secrets or breach of contracts by Cao." Ex. B at 15 (RFP No. 42). Tesla refused at first, citing privilege. *Id.* Then, at 7:51 p.m. on the eve of a Rule 30(b)(6) deposition about its investigation, Tesla changed course. In its last-minute about-face, Tesla withdrew its objections, affirmatively and explicitly waiving work product protection over investigation documents. Tesla's attorneys stated: "*We are not asserting a work-product objection to your discovery requests relating to (1) Tesla's communications with law enforcement or (2) Tesla's investigation, in each case specifically concerning Cao's misappropriation of Autopilot source code. We therefore intend to reproduce documents previously withheld as work-product or previously redacted as work-product.*"

*Use of Tesla's Privileged Documents.* Pursuant to its affirmative waiver, Tesla then produced thousands of investigation documents. It produced a raft of communications by or among investigators. It produced a "script" of questions used to interview employees. It produced an "investigation plan" identifying witnesses and investigation action items. It produced a summary of a witness interview with Cao's direct supervisor, Andrej Karpathy. Next, at Karpathy's deposition on July 9, 2020, Tesla's attorneys sat idly by and said *nothing* while Karpathy described the interview and discussed the written summary of it. Tesla concedes its attorneys were at that point "directly involved" in the investigation.

*Telsa Backtracks, Claws Back Documents, and Withholds Others.* In derogation of its express waiver, and in contradiction of its silence in the face of Cao's use of the Karpathy's interview summary,

Tesla then began to reverse course. In August, *six weeks after Karpathy's deposition*, Tesla refused to allow its Rule 30(b)(6) witnesses to discuss the substance of internal witness interviews. It then clawed back an outline of interview questions. It also clawed back a report that included a list of witness interviews and the status of the internal investigation. Yet Tesla made no attempt to clawback the Karpathy interview summary. It asserted no privilege over Karpathy's testimony about the interview.

Tesla then produced a privilege log, which revealed, for the first time, that Tesla had withheld up to thirty other documents substantially identical to the Karpathy summary it had produced and allowed to be used at deposition. These additional documents were disclosed as items 399-428 on Tesla's privilege log ("Interview Summaries"). Ex. C. Tesla's log contains no indication of an author or recipient of these summaries, nor any other basis to evaluate its claim of privilege. Presumably these documents, like the "investigative action" regarding the Karpathy interview, were all created as part of Tesla's routine business practices and addressed to the investigative "file," not to an attorney. Ex. A.

**Tesla Belatedly Attempts To Clawback the Karpathy Interview Summary.** One day ago, *but four months after the document was highlighted for its attorneys and used at Karpathy's deposition*, Tesla lamely asked to clawback the Karpathy summary. "Inadvertent" is not a word that applies here.

**II.  Argument**

The Court should order Tesla to produce the "Interview Summaries" on its privilege log, as well as any other documents reflecting the substance of its 14 internal interviews. Tesla also should be ordered to pay costs for a further 2-hour deposition of its Rule 30(b)(6) witness so that Cao can complete his examination about the withheld summaries and get answers that Tesla's lawyers impermissibly refused to allow the witness to answer, after previously allowing Karpathy to testify on the same subject.

To start, these investigation documents are not privileged. Tesla has affirmatively waived any work product protection over these documents. And while Tesla now asserts that the documents are protected by the attorney-client privilege, that is incorrect. These documents are not communications with in-house or outside counsel. They were not prepared by attorneys. Nor, despite Tesla's efforts to characterize them this way, were they prepared for the purpose of seeking or giving legal advice. Tesla does not claim that any of the interviewed witnesses ever sought legal advice. Instead, these documents merely summarize aspects of a *factual* investigation, and so are not protected by the attorney-client

privilege, even if attorneys later used them to give advice. *See Molex v. City & Cty. of San Francisco*, No. 11-1282-YGR KAW, 2012 WL 1831640, at *2 (N.D. Cal. May 18, 2012) ("the attorney-client privilege only protects communications between a client and a lawyer for the purpose of obtaining legal advice"). According to Tesla's own investigators, and as shown on the face of the Karpathy interview summary itself, these documents are memos "to file" containing "substantive facts."

Even if the attorney-client privilege was applicable to the interview notes and memoranda, Tesla waived that protection. Parties cannot selectively waive attorney-client privilege, producing and using a subset of privileged documents for their own benefit (like the Karpathy summary), then withholding other documents on the same subject. *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127-31 (9th Cir. 2012); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (emphasis added). Stated differently, Tesla cannot produce its favorite witness summary as evidence while concealing other summaries and invoking privilege as a shield, nor can it salvage its obvious selective waiver by purporting to claw back the Karpathy interview summary now, *more than four months* after the document was brought to the attention of Tesla's attorneys and used extensively at deposition.

**Plaintiff Tesla's Position.** In February 2019, Tesla investigators working directly with Tesla's inhouse counsel interviewed 14 Tesla employees about Defendant Guangzhi Cao's misappropriation of Tesla source code and departure to XMotors. Lawyers participated in some but not all of the interviews. So counsel could provide legal advice, interviewers wrote summary memos, which they submitted to the confidential investigation file shared with counsel. Counsel used the memos to decide whether Tesla should sue Cao. These documents are protected by the attorney-client privilege (ACP). Cao seeks production of the memos by falsely (and irrelevantly) asserting Tesla waived work-product (WP) protection and repeatedly misrepresenting the record. Tesla inadvertently produced *one* interview memo (now clawed back). Cao asked *one* question about the substance of that interview at a deposition. No other memo or interview contents has ever been disclosed. This motion should be denied.

**The Interview Memos Are ACP**. From the start, the investigation involved both Tesla's inhouse counsel and Tesla Global Security Response (GSR), as makes sense when an employee misappropriates valuable trade secrets and the FBI investigates. Not all GSR communications included Tesla counsel, not all communications sought legal advice, and not all GSR tasks related to litigation. So Tesla has produced

many ***non-privileged*** documents related to GSR's work. But for employee interviews, ***lawyers*** reviewed and revised the interview script to ensure the ***lawyers*** obtained information ***lawyers*** needed to advise Tesla. Tesla attorney Angela Chadwick personally attended and participated in some interviews, giving *Upjohn* warnings and advising employees of their obligations. Interviews first were summarized in notes, which investigators converted to formal memos and saved to an electronic investigation file for assessment by counsel, including Ms. Chadwick and Tesla litigation counsel Candace Jackman, so Tesla could decide whether to sue Cao and press criminal charges. Tesla then gave the memos to outside litigation counsel.

The interview memos are at the heart of ACP. Ms. Chadwick actually participated in at least four interviews; the others followed the script developed with counsel. GSR provided memos to counsel to obtain legal advice about the FBI's investigation and Tesla's legal rights against Cao. *See Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981) (communications from company employees to counsel to secure legal advice are privileged); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2010) ("[W]hen an attorney conducts a factual investigation in connection with the provision of legal services, any notes or memoranda documenting client interviews or other client communications in the [investigation's] course are fully protected by the attorney-client privilege."). While the desire for legal advice was not the memos' sole purpose, it was the primary one, which is all ACP requires. *See Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, *4 (N.D. Cal. Aug. 23, 2004).

Cao's assertions do not overcome ACP. He states, without any support, that: (a) the memos "are not communications with in-house or outside counsel" (*wrong*); (b) the memos were not prepared to obtain legal advice (*wrong*); and (c) the investigation was "factual," not legal, and so not privileged (*doubly wrong*). Lastly, he notes the "to" and "from" fields in the privilege log are blank. But those are email metadata fields; the memos were not emails. But their contents and circumstances confirm they are ACP.[1]

**Cao Knows Tesla Never Waived ACP.** Cao quotes only part of Tesla's June 11 email stating it would not assert WP as to its investigation of Cao, and omits the rest of the email:

> There are certain communications by Tesla employees with Tesla attorneys for the purposes of obtaining legal advice relating to Tesla's communications with law enforcement and Tesla's investigation to Cao's misappropriation of Autopilot source

---

[1] In the one fruitless meet and confer on November 16, Cao did not ask for a more detailed privilege log; his counsel simply announced they had already written their brief.

code. ***We continue to maintain our attorney-client privilege objection to producing or unredacting those communications***. (emphasis added)

At the Aug. 21 deposition of Mr. Nocon, Tesla again clearly asserted ACP as to the memos and what was said in interviews. Exhibit D (Nocon Tr. 101-02) (Tesla counsel: "I am focusing squarely on the interviews, and there is an attorney-client privilege issue as well, which I've already mentioned.")[2]

**Tesla Did Not Waive By Disclosing Documents.** Cao has the burden to establish waiver; he does not meet it. *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, *5 (N.D. Cal. Dec. 13, 2013). In this case, Tesla has produced 20,598 documents. It clawed back ***three***: the interview memo of Dr. Karpathy (Ex. 78), a GSR investigative plan (Ex. 125, re-produced after redacting the lawyer-drafted interview questions), and a lawyer's edit of responses to the FBI (not disputed). Cao claims Tesla lawyers "sat idly by" while Cao used the first two at depositions. Not so. Tesla initially failed to object to Ex. 78 because Ms. Chadwick did not attend that interview and the memo itself did not reveal counsel's role. Other than trying to authenticate it, Cao asked only ***one*** question about Ex. 78's contents; save that question, no witness has ***ever*** testified about the content of ***any*** interview. Tesla clawed back Ex. 78 when – four months later – Cao suddenly claimed his own de minimis use created subject matter waiver. Tesla immediately demanded the return of Ex. 125 (not an interview memo) at Mr. Nocon's deposition, leading to an exchange in which Cao counsel promised "***defendant will not argue waiver***" based on his questioning about the document. Ex. D (Nocon Tr. 89-90). Oh well. Tesla has never ***used*** the contents of any interview for any purpose and will not. Inadvertent production of ***one*** clawed back interview memo without any affirmative use is not waiver, and certainly not subject matter waiver. *See* Fed. R. Evid 502(b); *Orthopaedic Hosp. v. DJO Glob., Inc.*, 2020 WL 5363307, *8-11 (S.D. Cal. Sept. 8, 2020).

**Tesla Withheld <u>Zero</u> Investigation Documents Based on WP Objections Related to the Investigation.** Tesla unequivocally rejects that it "waived" WP protection, but it makes no difference. Cao challenges Tesla's WP claim over three documents (plus two duplicates). In each case, the redacted text describes WP related to ***a different litigation***, not "specifically concerning Cao's misappropriation of Autopilot source code," as stated in the June 11 email. Tesla's objections and redactions are proper.

---

[2] Cao claims Tesla's June 11 email "waived" WP. It did not. Tesla did not assert WP because Tesla concluded WP did not apply to those particular documents. That is no waiver. To prove waiver, Cao would have to prove, among other things, that Tesla disclosed documents that are in fact protected by WP. He does not even try.